IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FRANCES M. DEVONISH,

    Plaintiff,

        v.                  CIVIL NO.: WDQ-13-0108

JANET NAPOLITANO, SECRETARY,
U.S. DEPARTMENT OF HOMELAND
SECURITY,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Frances M. Devonish sued Janet Napolitano, in her official
capacity as Secretary of the United States Department of
Homeland Security ("DHS") for employment discrimination in
violation of Title VII of the Civil Rights Act of 1964 ("Title
VII")[1] and the Age Discrimination in Employment Act of 1967
("ADEA").[2] ECF No. 1. Pending is the defendant's motion to
dismiss for failure to state a claim or for summary judgment.
ECF No. 18. No hearing is necessary. Local Rule 105.6 (D. Md.
2011). For the following reasons, the defendant will be granted
summary judgment.

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 29 U.S.C. §§ 621 *et seq.*

I. Background[3]

In 1990, Devonish, an African-American female born in 1952, was hired by the Coast Guard--a department within DHS--as a materials handler. *See* ECF Nos. 18-2 at 1, 18-4 at 5, 18-11 at 2. In 2001, she became a supply technician--a GS-6 level federal government job--and was supervised by Deborah Harris. *See* ECF No. 18-4 at 4, 7-8.

Overall, Devonish performed her job well. *See, e.g.*, ECF No. 22-7 at 5; ECF No. 18-11 at 3 (Devonish notes that she "always" received performance ratings of "Exceeds" expectations). She was considered so knowledgeable and experienced that she was often tasked with training her fellow employees. *See, e.g.*, ECF Nos. 18-4 at 7, 18-11 at 3, 22-11 at 18. In her 2009-2010 performance review, Harris gave Devonish the highest performance rating possible--"exceeds expectations."[4]

---

[3] The facts are taken from the defendant's motion, ECF No. 18, Devonish's opposition, ECF No. 22, the defendant's reply, ECF No. 28, and their supporting exhibits. In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] To arrive at an overall rating of "exceeds expectations," Harris evaluated Devonish's performance in several categories identified as "core competencies." *See, e.g.*, ECF No. 22-4 at 4. For example, in the category "Quality of Work," Harris marked that Devonish exceeded expectations based on the "performance standards" of, *inter alia*, delivering "accurate, thorough, and complete" work. *See id.* Harris also rated Devonish's performance as "exceeds expectations" in the category

2

*See* ECF No. 22-1 at 11. In the written comments, Harris wrote that "Devonish is doing an excellent job as a customer service representative [and] has an outstanding rapport with the customers." *Id.* at 16. Harris also stated that Devonish had run a variety of reports "effortlessly" and "trained other product line Supply Technicians" on various aspects of the job. *See id.* In 2010, Harris gave Devonish a monetary award for her performance. *See* ECF No. 22-2 at 3.

On June 22, 2010, the Coast Guard posted a vacancy announcement for a GS-7 level supply technician job. *See* ECF No. 18-2 at 1. As an internal candidate, the required qualifications to receive a promotion included "52 weeks of service at the next lower grade," and the announcement noted that the job was "open to veterans who are preference eligibles." *See id.* at 1-2. Prospective applicants had to submit a written application and resume, and "[t]he most highly qualified candidates [would] be referred to the hiring manager for further consideration and possible interview." *Id.* at 3-4. Devonish applied for the job by submitting a written application and resume. *See* ECF No. 18-4.

---

of "Communication." *See id.* Finally, for the category, "Timeliness and Quantity of Work," Harris rated Devonish's performance as "meeting expectations," based on performance standards such as "[p]lans and organizes work to ensure timeliness and productivity goals are met." *See id.*

Harris was the "selecting supervisor" and recruiter for the new GS-7 level job. *See* ECF No. 18-3 at 2. Four people were selected to interview, including Devonish. *See* ECF No. 18-10. The interviewing panel consisted of Harris, a white female born in 1957, Lane Sherlock, a white male born in 1962, and Luanna Straker, an African-American female born in 1959.[5] ECF Nos. 18-3 at 2, 18-6 at 2, 18-7 at 2. The panel asked each applicant the same 13 questions. *See* ECF No. 18-3 at 2, 4. Each panel member wrote notes about the applicant's responses to the questions and was directed to score the responses from 1-10.[6] *See, e.g.*, ECF No. 18-8 at 6-10.

In affidavits filed after the interviews, all three panel members stated that Devonish performed poorly at her interview. Harris averred that Devonish "pretty much bombed her interview." ECF No. 18-3 at 4. She noted that Devonish had only answered "2 questions [scored] better than average" and had answered "8 questions below average." *Id.* According to Harris, Devonish "did not elaborate enough on her answers," despite her long tenure with the Coast Guard. *See id.* Devonish also did not

_____

[5] Straker and Sherlock were from a separate "supervisory chain of command" than that of Harris and Devonish. *See* ECF No. 18-6 at 2.

[6] On Harris's interview notes, no selected numerical score is visible for some applicants, including Devonish, and for other applicants, no score is visible for some questions. *See, e.g.*, ECF No. 18-8 at 7, 22, 47.

sufficiently explain what "tools she uses to organize herself," appeared to lack experience in several relevant areas, and "lacked a can-do attitude." *See id.* Finally, Devonish stated during the interview that "she was a last minute person," which Harris perceived "negative[ly]" because the statement implied that Devonish "leaves tasks to the last minute and has to rush to complete them." *Id.*

Straker averred that Devonish's answers to the interview questions "were not specific or correct." ECF No. 18-6 at 3. Sherlock averred that he had known Devonish professionally for over seven years, and "[s]he failed to demonstrate within the interview that she had all the experience that [he knew] she possessed to sell herself on these criteria. She also failed to sell herself that she was motivated to continue to grow and learn more in her career. . . . [He] did not recommend [Devonish for the job] because she did not interview well."[7] ECF No. 18-7 at 3.

---

[7] After Devonish filed a formal complaint about her non-selection, an investigator interviewed Sherlock and Straker about the selection process. *See* ECF Nos. 18-14, 18-15. Sherlock told the investigator that "'this job was Frances['s] to get,'" but "she did not elaborate enough or at all when she was asked to describe [] how and when to apply establish[ed] process[es] and procedures to perform the job." ECF No. 18-14 at 1. Straker said that Devonish "was all over the place and did not answer the questions accurately." ECF No. 18-15 at 1. Straker and Sherlock said that "'Devonish did wors[e] than all the applicants.'" ECF Nos. 18-14 at 1, 18-15 at 1.

The panel also interviewed Mandy Goble, a white woman in her thirties, who was a GS-6 level Coast Guard employee with five years of experience as a supply technician.[8] ECF Nos. 18-5 at 6, 18-11 at 5. Before joining the Coast Guard, Goble had served in the Army as a Unit Supply Specialist and was eligible for a hiring preference as a veteran. ECF No. 18-5 at 1, 8. All three interviewers averred that, in her interview, Goble performed best of the four candidates. Harris noted that Goble "was a go-getter[,] seemed to be a quick learner[, and] was well organized." ECF No. 18-3 at 3. During the interview, Goble "spoke well" and "answered the questions promptly." *Id.*

According to Harris, Goble discussed her strategies to ensure she met deadlines, the relevant training she had received, and her previous experience. *See id.* Harris also stated that she chose Goble "because [she] felt she was better qualified" and "brought more to the table especially with her experiences in the Army as a Supply Specialist. Her attitude, organization skills." *Id.* at 4. Sherlock averred that Goble "demonstrated throughout the interview process 2 areas which [he] considered were important to the job - internal [Coast Guard] experience and the willingness/motivation to work hard and learn." ECF No. 18-7 at 2. Straker simply noted that "2

---

[8] In her application, Goble notes that she received an annual performance rating of "exceeds expectations" every year but one (2007) from 2003 to 2009. ECF No. 18-5 at 10.

candidates . . . probably scored higher" than Devonish "based on [Straker's] interview scores," and one was Goble who "gave the best answers to all the questions." ECF Nos. 18-15 at 2, 18-6 at 3.

After the interviews, each candidate's numerical scores for each question were averaged and the totals added together to obtain an overall interview score, which was then factored into each candidate's overall rating. ECF Nos. 18-7 at 3, 18-9, 18-10. Goble and Devonish had identical scores for job-specific experience and education, but Goble's resume was rated higher. ECF No. 18-10. Devonish had the lowest combined interview and resume score of all four candidates and was ranked third overall, while Goble was ranked first.[9] *Id.* Harris chose Goble for the job. *See* ECF No. 18-3 at 4.

On August 30, 2010, Devonish learned that she had not been selected for the promotion. ECF No. 18-11 at 2. On September 7, 2010, Devonish met with Harris, Harris's supervisor, Lisa Krynick, and a union representative to discuss why Devonish had not been selected.[10] *See id.* at 6. After hearing Harris's and

---

[9] Goble received an overall score of 269.9%; Devonish received an overall score of 229.90%; the other candidates received scores of 261.90% and 200.95%. ECF No. 18-10.

[10] Devonish admits that, when asked about her interview performance, Harris "did not call [her] black [or] say [she] was old, but she stated that [Devonish] did not prove [she] was qualified for the job." ECF No. 18-11 at 5.

7

Krynick's comments at the meeting, Devonish "felt like [she] was shown that [she] was too old or that they didn't want an older black female in that position. . . . To [her] they wanted someone younger and not of color."[11]  *Id.* at 2, 6.

On September 15, 2010, Devonish requested written feedback from Harris on her interview performance.  *Id.* at 6.  On September 23, 2010, Harris replied by email.  *Id.* at 7.  Harris explained that, although she knew Devonish's capabilities because they had worked together for so long, "the other panel members [did] not know this information.  Therefore, it [was] inappropriate for [her] to consider facets" of Devonish's skills that she "did not elaborate upon" during the interview.  ECF No. 18-12 at 2.  She also identified which questions "earned [Devonish] favorable ratings" and which did not, discussing, in detail, why Devonish's answers to the lower-rated questions were insufficient.  *See id.* at 2-3.

In an affidavit, Devonish averred that she had been "best qualified" for the job "based on [her] evaluations, the time on the job . . . and the kudos [she] received" from various people,

_____

[11] At some time, Devonish asked Harris if they "thought [she] was too old or too black to understand or grasp the new process."  ECF No. 18-11 at 5.  Harris and Krynick said "that had nothing to do with [her] non-selection."  *Id.*

including customers, co-workers, and managers.[12]  *See* ECF No. 18-11 at 3.  Devonish stated that Harris told her that she "did not elaborate enough to prove [she] knew the job" during the interview, and acknowledged that "[m]aybe [she] forgot some of the stuff," but noted that it was only her "2nd interview in 20 years."  *Id.*  She also stated: "Of course I knew the job, but maybe I did not express it."  *Id.*  However, Devonish had believed that Harris, who had been her supervisor for 10 years, "would take into consideration that she knew [Devonish's] experience with the job."[13]  *Id.* at 4.

On September 27, 2010, Devonish filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging, *inter alia*, that she was "discriminated against in regards to [her] race and or age which resulted in [her] non-selection

---

[12] In particular, Devonish averred that her "skills and knowledge of the job far exceed those of the selectee because [Devonish has] been 22 years in the same field of supply and inventory." ECF No. 18-11 at 4.  Devonish stated that, although she did not know some of the "new processes" Goble had to learn for the job, she still had to participate in training Goble during Goble's first several months in the GS-7 level job.  *See id.* at 4-5; ECF No. 22-1 at 18-20.  After Goble had been on the job for some time, Devonish discovered that she knew all the processes that were part of Goble's job, except one--process requisitions in the Fleet Logistics System.  *See* ECF No. 18-11 at 8-11.

[13] In May 2011, Devonish was promoted to a GS-7 level job by a different Coast Guard official.  ECF No. 22 at 18.

[for] the GS-7, Supply Technician position."[14]  *See* ECF No. 18-13 at 4.  After an investigation, on September 11, 2012, an EEOC Administrative Judge ("AJ") awarded DHS summary judgment without a hearing.[15]  ECF No. 18-16 at 1-2.  The AJ's decision and the evidentiary record[16] were reviewed by DHS's Office for Civil Rights and Civil Liberties ("CRCL"), which issued a final order on October 12, 2012 "finding no discrimination."  ECF No. 18-17 at 1-3.  The CRCL also issued Devonish a right to sue letter.  *Id.* at 5.

On January 10, 2013, Devonish sued DHS alleging that she had not been promoted because of her race and age, in violation of Title VII and the ADEA.  ECF No. 1.  On June 25, 2013, Devonish filed an amended complaint.  ECF No. 15.

---

[14] In her EEOC complaint, Devonish notes that she is seeking a "fair assessment," because she has "observed the new hire being trained on tasks that are a part of [Devonish's] current daily duties."  ECF No. 18-13 at 4.  She notes that "[t]he evolution of the newly created position isn't anticipated for some time and training pertaining to the specific duties of that position has not yet taken place.  [She] would like [her] supervisor to explain why she feels [Devonish doesn't] possess the knowledge, skills and ability required for the position . . . ."  *Id.*

[15] The AJ concluded that an evidentiary hearing was unnecessary, because the "record [was] adequately developed in that it contain[ed] all the information necessary . . . to accurately adjudicate the complaint," and there were no genuine disputes of material facts.  ECF No. 18-16 at 1.

[16] The exhibits attached to DHS's motion "were primarily derived from the Report of Investigation (ROI) created during the underlying administrative proceeding."  ECF No. 22-2 at 3.

On June 29, 2013, DHS moved to dismiss the amended complaint for failure to state a claim or for summary judgment. ECF No. 18. On August 16, 2013, Devonish opposed the motion, arguing that she had sufficiently alleged her claims in the amended complaint, that "genuinely disputed material facts [precluded] summary judgment," and that summary judgment was premature because Devonish had not had an adequate opportunity to conduct discovery. ECF No. 22 at 8. In addition to several exhibits, Devonish attached a Rule 56(d) affidavit to her opposition to support her request for further discovery. ECF No. 22-2. On October 17, 2013, DHS replied. ECF No. 28.

II. Analysis

    A. Standard of Review

        1. Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[17] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

---

[17] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

trial." *Anderson,* 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

2. Rule 56(d) Request for Discovery

Federal Rule of Civil Procedure 56(d) requires the district court to deny summary judgment, when the nonmovant "has not had the opportunity to discover information that is essential to [her] opposition." *Works v. Colvin*, 519 F. App'x 176, 181-82 (4th Cir. 2013) (*quoting* Fed. R. Civ. P. 56(d)) (internal quotations omitted). The nonmovant must show through affidavits that she cannot yet properly oppose a motion for summary judgment. Fed. R. Civ. P. 56(d); *Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996). The Fourth Circuit "place[s] great weight on the Rule 56[d] affidavit." *Evans,* 80 F.3d at 961. "The purpose of the affidavit is to ensure that

12

the nonmoving party is invoking the protections of Rule 56[d] in good faith and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quotation marks omitted).

"A Rule 56[d] affidavit that conclusorily states that discovery is required is insufficient; the affidavit must specify the reasons the party is unable to present the necessary facts and describe with particularity the evidence that the party seeks to obtain." *Radi v. Sebelius,* 434 F. App'x 177, 178 (4th Cir. 2011) (*citing Trask v. Franco,* 446 F.3d 1036, 1042 (10th Cir. 2006)). A nonmovant's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 954 (4th Cir. 1995).

However, because the rule "is intended as a safeguard against a premature grant of summary judgment[, courts] should construe the rule liberally[.]" *Works,* 519 F. App'x at 182 (internal quotations omitted).

B. Failure to Promote

Title VII and the ADEA make it unlawful for an employer "to fail or refuse to hire . . . or otherwise to discriminate

13

against any individual with respect to [her] compensation,
terms, conditions, or privileges of employment, because of such
individual's" race or age.  42 U.S.C. § 2000e-2(a)(1); 29 U.S.C.
§ 623(a)(1).

To establish a *prima facie* case of failure to promote on
the basis of race or age bias, Devonish must prove:[18] "(1) she is
a member of a protected group,[19] (2) there was a specific
position for which she applied, (3) she was qualified for that
position, and (4) [DHS] rejected her application under
circumstances that give rise to an inference of
discrimination."[20]  *Williams v. Giant Food Inc.*, 370 F.3d 423,

---

[18] Because Devonish has produced no direct evidence of
discrimination--"evidence of conduct or statements that both
reflect directly the alleged discriminatory attitude and that
bear directly on the contested employment decision"--she must
proceed under the burden-shifting approach of *McDonnell Douglas
Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 1824-26,
36 L. Ed. 2d 668 (1973).  *See, e.g.*, *Phair v. Montgomery Cnty.
Pub. Sch.*, 3 F. Supp. 2d 644, 647 (D. Md. 1997) *aff'd*, 141 F.3d
1159 (4th Cir. 1998) (*quoting Fuller v. Phipps*, 67 F.3d 1137,
1142 (4th Cir. 1995) *abrogated on other grounds by Desert
Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed.
2d 84 (2003) (internal quotations omitted)).

[19] Devonish is in a protected class under Title VII, because she
is African-American.  *See* ECF No. 18-11 at 2; *Carter v. Ball*, 33
F.3d 450, 459 (4th Cir. 1994).  She is in a protected group
under the ADEA, because she was over 40 years old when she was
denied the promotion to the GS-7 level job.  *See* ECF No. 18-11
at 2; *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

[20] In age discrimination cases, the plaintiff must show that "the
position remained open or was filled by a similarly-qualified
applicant who was substantially younger than the plaintiff,
whether within or outside the class protected by the ADEA."

14

430 (4th Cir. 2004); *Honor v. Booz-Allen & Hamilton, Inc.,* 383
F.3d 180, 189 (4th Cir. 2004); *Hildebrandt*, 492 F. Supp. 2d at
518. To rebut the *prima facie* case, the employer may
"demonstrate[e] that the person promoted was better-qualified
for the position." *Honor,* 383 F.3d at 189 (*citing Amirmokri v.
Baltimore Gas and Elec. Co.,* 60 F.3d 1126, 1129 (4th Cir.
1995)); *Hildebrandt,* 492 F. Supp. 2d at 518.

The burden then shifts to the employee to demonstrate that
the employer's "reason for promoting the successful applicant
was pretextual." *Honor,* 383 F.3d at 189. To show pretext, the
plaintiff must prove by a preponderance of the evidence that
"the proffered reason was not the true reason for the employment
decision," and that the true reason was discrimination. *Texas
Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct.
1089, 1095, 67 L. Ed. 2d 207 (1981). She may do this directly
or indirectly, by "persuading the court that a discriminatory
reason more likely motivated the employer" or by showing that
the employer's explanation is "unworthy of credence." *Id.* In
failure to promote cases, "the plaintiff must establish that she
was the better qualified candidate for the position sought."
*Evans*, 80 F.3d at 960.

---

*Hildebrandt v. W.R. Grace & Co.-Conn.,* 492 F. Supp. 2d 516, 518
(D. Md. 2007) (*citing O'Connor v. Consol. Coin Caterers Corp.,*
517 U.S. 308, 310-312, 116 S. Ct. 1307, 134 L.Ed.2d 433 (1996)).

## 1. Evidence Presented

Here, Devonish has established a *prima facie* case. She applied for a specific position--the GS-7 level supply technician job--for which she was qualified because she had been in the next lower grade job for at least 52 weeks when she applied. *See* ECF Nos. 18-2 at 1-4; 18-4. Also, she was replaced by a white woman who is substantially younger than her, *see* ECF No. 18-11 at 5, which is sufficient to raise an inference of discrimination under Title VII and the ADEA, *see Carter*, 33 F.3d at 458; *Jackson v. Winter*, 497 F. Supp. 2d 759, 768 (E.D. Va. 2007). However, DHS has rebutted Devonish's *prima facie* case by producing evidence of a legitimate, non-discriminatory reason for her non-selection--that the chosen candidate was better-qualified for the position because of her resume and interview performance. *See, e.g.*, ECF No. 18-10; *Jackson*, 497 F. Supp. 2d at 768 (concluding that "[defendant] has successfully rebutted [plaintiff's] *prima facie* case by demonstrating that the selected candidate . . . had the highest combined resume and interview rating").

Because DHS has rebutted Devonish's *prima facie* case, to defeat summary judgment, Devonish must show that DHS's proffered reason for selecting Goble rather than Devonish was pretextual. *See Honor,* 383 F.3d at 189. Devonish argues that she had an "[e]xemplary [p]erformance [r]ecord," which must be considered

16

in determining her qualifications for the GS-7 level job. *See* ECF No. 22 at 13. Because Harris, who was responsible for selecting a candidate for the GS-7 level job, "rated Ms. Devonish's performance [as] 'exceed[s]' expectations" only four months before Devonish's interview, Devonish contends that DHS's reasons for not selecting her should be disregarded.[21] *See id.* at 14-15.

Although the evidence shows that Devonish performed well in the GS-6 level job, there is no evidence that prior performance--standing alone--was one of the factors considered for the promotion.[22] *See, e.g.*, ECF Nos. 18-10, 22-1 at 11-16. Even if the Court agreed with Devonish that this should have been a factor for promotion, the Court may not act as a "super-personnel department weighing the prudence of employment decisions." *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271-72 (4th Cir. 2005) (*quoting DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (internal quotations omitted)). DHS correctly contends that Devonish may not "establish her own criteria for judging her qualifications

---

[21] Devonish notes that several of Harris's comments in her performance review "are in stark contrast" to her negative feedback on Devonish's interview. *See* ECF No. 22 at 15-16.

[22] If prior performance was a factor, there is no evidence that Devonish was more qualified than Goble on this factor. Goble had also received a rating of "exceeds expectations" on her last performance review. ECF No. 18-5 at 10.

17

for promotion." ECF No. 28 at 12 (*quoting id.* at 269 (internal quotations omitted)).[23]

Here, the promotion criteria heavily weighted the applicants' interviews and resumes, not their performance records. *See, e.g.,* ECF No. 18-10. The unrefuted evidence is that all three interviewers concluded that Devonish performed poorly during the interview[24]--the worst interview performance of all four candidates--and that Goble had the best interview and received higher marks for her resume than Devonish, making Goble the most qualified applicant under DHS's criteria. *See, e.g., id.*; ECF Nos. 18-14 at 1, 18-15 at 1. That Harris was aware of Devonish's strong on-the-job performance does not render her conclusions about Devonish's poor interview performance "unworthy of credence,"[25] especially as Devonish acknowledged

---

[23] *See also Evans*, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (internal quotations omitted)).

[24] That all three interviewers were over the age of 40, and Straker was African-American, also undermine Devonish's claim that age or race bias was the real reason for her non-selection. ECF Nos. 18-3 at 2, 18-6 at 2, 18-7 at 2; *see Neely v. United States Postal Serv.,* 2007 WL 4389473, at *8 n.4 (E.D. Pa. Dec. 12, 2007) ("Although the fact that a [decision-maker] is a member of the same protected class as the plaintiff does not preclude a successful discrimination claim, it substantially weakens any inference of discrimination.") (*quoted in Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 103 (4th Cir. 2008)).

[25] Devonish contends that Harris's and Krynick's comments made her "fe[el] like [she] was shown that [she] was too old or that they didn't want an older black female in that position." ECF

that she may not have fully "express[ed]" her knowledge of the job during her interview. *See* ECF No. 18-11 at 3; *Burdine*, 450 U.S. at 256; *see also Malghan v. Evans*, 118 F. App'x 731, 733 (4th Cir. 2004) ("That Malghan also was well-qualified for the position does not establish discrimination by the Agency in its selection of another well-qualified individual for the position for which Malghan applied."). Devonish must "compete for the promotion based on the qualifications established by her employer." *Anderson*, 406 F.3d at 269.

Devonish also asserts that "a jury can reasonably conclude that Defendant's reasons for not selecting Ms. Devonish are pretextual," because Devonish had to train Goble in some areas of the job for four to six months after she was hired. ECF No. 22 at 14. However, this evidence also fails to refute DHS's evidence that Goble performed better than Devonish in the criteria established for the promotion.[26] *See, e.g.*, ECF No. 18-

_____

No. 18-11 at 6. In an affidavit Devonish acknowledges, however, that Harris never mentioned her race or age in connection with her non-selection, and denied that either was a factor in the decision when Devonish asked. *Id.* at 5. "[U]nsupported speculation" is insufficient to support a discrimination claim. *Evans*, 80 F.3d at 960.

[26] Further, "post-selection performance failures are relevant to a pretext inquiry when the selectee exhibited similar performance failures during the decision process and where the decisionmaker was aware of these failures." *Luh v. J.M. Huber Corp.*, 211 F. App'x 143, 148 (4th Cir. 2006). Here, the evidence is that, before her selection, Goble received exemplary performance reviews. *See* ECF No. 18-5 at 10. Thus, her post-

10.    Sherlock and Harris knew Devonish was *capable* of performing the GS-7 level job, with Sherlock remarking that it was Devonish's "job to get." *See* ECF Nos. 18-12 at 2, 18-14 at 1. However, DHS decided to evaluate the candidates for promotion on the basis of their comparative interview performance, rather than the interviewers' knowledge of the candidates' abilities and experience.[27] "Absent evidence of discriminatory intent," an employer has discretion to choose which method it will use to evaluate candidates for promotion, including use of an interview process. *See Jackson*, 497 F. Supp. 2d at 767-68 (denying failure to promote claim, because "Plaintiff [cannot] escape the consequences of his own poorly written resume and weak interview performance"); *Hux v. City of Newport News, Va.*, 451 F.3d 311, 319 (4th Cir. 2006) ("Interviews are an important tool that employers use to make all sorts of hiring decisions, and we may not lightly overturn the reasonable conclusions an employer reaches after actually meeting with a candidate face-to-face."). As the plaintiff's evidence does not create a genuine dispute of material fact, DHS is entitled to summary judgment.

---

selection performance is irrelevant to the issue of whether discrimination occurred during the selection process.

[27] *See, e.g.*, ECF No. 18-2 at 2 (Harris stated that it was inappropriate for her to consider her prior knowledge of Devonish's abilities, because the other interviewers lacked her experience working with Devonish).

2. Request for Further Discovery

Devonish also submits a Rule 56(d) affidavit, arguing that summary judgment is premature because "[t]here are colorable issues for which discovery is necessary." ECF No. 22 at 17. DHS contends that "given the Plaintiff's failure to sufficiently demonstrate a need" for more discovery, "and given the ample record that has already been developed . . . Plaintiff's request for discovery should be denied." ECF No. 28 at 20.

In her affidavit, Devonish contends that discovery is necessary to "reconcile[e] . . . Devonish's exemplary performance review . . . and Ms. Harris' later contention that Ms. Devonish was not well organized and otherwise less qualified than the selectee about whom there is no evidence that her performance was ever comparably rated"[28] and to "reconcil[e]" Devonish's non-selection with her recent monetary award.[29] ECF

---

[28] Contrary to Devonish's assertion, the evidence establishes that Devonish and Goble received ratings of "exceeds expectations" for their performance reviews for the year immediately preceding the interview. ECF Nos. 18-5 at 10, 22-1 at 11.

[29] In her brief, Devonish also contends that discovery is necessary "to investigate further evidence of discriminatory animus by Ms. Harris." ECF No. 22 at 18. She contends that Harris's comment that Goble "spoke well," could be viewed as "disparaging against African Americans." *Id.* However, as the comment was made in an affidavit, *see* ECF No. 18-3 at 3, the Court can fully review its context. There is no indication that Harris meant this comment *about Goble* to be disparaging to African-Americans generally, or to Devonish in particular, especially as Harris followed it up by stating that Goble

21

No. 22-2 at 3. For the reasons discussed above, Devonish has

not shown that further discovery on this issue is likely to

create a genuine dispute of material fact sufficient to defeat

summary judgment. *See supra* Section II.B.1. The established

criteria for promotion did not include prior on-the-job

performance. *See, e.g.*, ECF No. 18-10. Sherlock and Harris

were aware that Devonish performed well at her job,[30] but they

concluded that she did not adequately demonstrate that strong

performance in her interview, as was required for the promotion.

---

"answered the questions promptly." *See* ECF No. 18-3 at 3.
Also, that Devonish was promoted a year later by a different
selecting official does not suggest that there is evidence that
Harris had a discriminatory animus toward Devonish. *See* ECF No.
22 at 18. Although the evidence shows that Devonish would have
performed well in the GS-7 level job if she had been promoted
earlier, "[t]he crucial issue is whether the employer has an
unlawful[] discriminatory motive, not the wisdom or folly of the
employer's business judgments." *Jackson*, 497 F. Supp. 2d at 768
(*quoting Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 383 (4th Cir.
1995)). DHS has offered unrefuted evidence that Harris's motive
in not selecting Devonish was her poor interview performance,
not race or age bias.

[30] That Sherlock was also aware of Devonish's strong job
performance, yet concluded that Goble was better qualified under
the established criteria, *see* ECF No. 18-7 at 2-3, is further
evidence that Harris's selection of Goble was not
discriminatory. *Cf. Candillo v. N. Carolina Dep't of Corr.*, 199
F. Supp. 2d 342, 346, 353 (M.D.N.C. 2002) (finding plaintiff
failed to show defendant's reason for not selecting him for
promotion was pretext for discrimination, in part because each
applicant was asked the same questions by a three-person
interviewing panel--two of whom were acquainted with the
plaintiff before the interviews--and each interviewer concluded
that the selectee was most qualified for the job based on her
interview performance).

*See* ECF Nos. 18-12 at 2, 18-14 at 1. There is no dispute that Devonish was qualified, but she was not the most qualified under DHS's non-discriminatory promotion criteria. *See Malghan*, 118 F. App'x at 733; *see also Harris v. Rumsfeld*, 428 F. Supp. 2d 460, 467-69 (E.D. Va. 2006) (finding no evidence of pretext when, in failure to promote case, interviewer gave plaintiff a low interview score but gave plaintiff "exceptional" performance evaluations, because "the selectees for the promotion were ultimately chosen on the basis of their interview performance").

Devonish also contends that discovery is necessary to determine "the method by which interview scores were tabulated when Deborah Harris, the selecting official, failed to assign numerical score[s] to the interviewees' responses." ECF No. 22-2 at 3. However, considering the substantial evidence already submitted on Devonish's interview performance, Devonish has not explained how that tabulation evidence could create a triable issue of fact on the issue of pretext. DHS submitted Harris's detailed reasons why she graded Devonish "below average" on eight of the 13 interview questions, and all three members of the interview panel agreed that Devonish performed worse than the other candidates during the interview.[31]   ECF Nos. 18-3 at 3-

---

[31] In her brief, Devonish argues that she should be given the opportunity to depose Straker and Sherlock to determine if they agreed with the specific contents of Harris's analysis of Devonish's interview answers. ECF No. 22 at 17. However, as

4, 18-12 at 2-3, 18-14 at 1, 18-15 at 1. Discovering the method
by which Harris marked candidates' scores will not refute the
fact that Devonish performed poorly during the interview, and
that this ranked her beneath two candidates for the promotion.[32]
*See* ECF No. 18-10.[33]

Finally, Devonish asserts that discovery is needed because
she "had performed the functions of what has been alleged to be
a 'newly created position' and had to train the selectee on
those functions." ECF No. 22-2 at 3. For the reasons discussed
above, that Devonish had to train Goble on some aspects of the
job does not refute DHS's evidence that Devonish was not the

---

Straker and Sherlock indisputably concurred with Harris's
overall conclusion that, based on interview performance, Goble
was better qualified than Devonish, this evidence will not
create a genuine dispute of *material* fact even if all three are
not in perfect agreement on how Devonish performed on individual
questions. *See, e.g.*, ECF Nos. 18-3 at 3-4, 18-12 at 2-3, 18-14
at 1, 18-15 at 1.

[32] Similarly, Devonish has not established a need to discover
Straker's interview notes for Devonish's interview, *see* ECF No.
22 at 19, as DHS's evidence includes: (1) two documents in which
Straker analyzes Devonish's interview performances and concludes
that Devonish performed worse than all the other candidates; and
(2) Straker's interview scores for the other candidates. *See*
ECF Nos. 18-15 at 1, 18-6 at 3, 18-8 at 11-14, 31-35, 41-45.

[33] *See also Williams v. Henderson*, 129 F. App'x 806, 814-15 (4th
Cir. 2005) ("[The] fact that Glinski did not specifically record
the candidates' interview answers does not tend to show that he
lied about their performances or that he ultimately chose the
white candidate over Lockhart because of Lockhart's race.");
*Langerman v. Thompson*, 155 F. Supp. 2d 490, 500 (D. Md. 2001)
(Title VII "is not meant to remedy every procedural flaw that
exists in an employer's selection process.").

best-qualified applicant under its non-discriminatory criteria for promotion.[34]  *See supra* Section II.B.1.  Construed liberally, Devonish's affidavit has not established that any of the evidence she seeks to discover is likely to create a genuine issue of material fact.  *See Strag*, 55 F.3d at 954.  The defendant will be granted summary judgment.

III. Conclusion

For the reasons stated above, the defendant's motion for summary judgment will be granted.

2/4/14

Date

William D. Quarles, Jr.
United States District Judge

---

[34] In the affidavit, Devonish asserts that discovery will contradict DHS's assertion that Goble's position involved "fulfilling a 'new' need of the Coast Guard" distinct from Devonish's GS-6 level job.  ECF No. 22-3.  However, in the evidence already submitted, Devonish acknowledges that Goble performed at least one process that was not part of Devonish's primary job, and that Goble's job would be "evol[ving]" in the future and require training that Devonish did not have.  ECF Nos. 18-11 at 8-11, 18-13 at 4.  Thus, Devonish's contention that Goble's job only involves functions that are already part of Devonish's GS-6 level job is inaccurate.